IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LATORA HAZSANA TYLER, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 13-7419 |

**REPORT AND RECOMMENDATION**

CAROL SANDRA MOORE WELLS
CHIEF UNITED STATES MAGISTRATE JUDGE                                September 29, 2014

Latora Hazsana Tyler ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it and Plaintiff has filed a reply brief. For the reasons set forth below, it is recommended that the case be REMANDED to the Commissioner for further proceedings consistent with this report and recommendation and Judgment be entered in favor of Plaintiff and against Defendant.

**I. PROCEDURAL HISTORY**[1]

On May 27, 2009, Plaintiff applied for DIB and SSI alleging disability, based upon bipolar disorder and schizophrenia.[2] (R. 411, 415). The claim was denied, initially, so Plaintiff requested a hearing. (R. 221). On October 25, 2010 and September 11, 2011, Plaintiff appeared before Sharon Zanotto, Administrative Law Judge ("the ALJ"), for administrative hearings. (R.

---

[1]The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record. ("R.").

[2]Plaintiff initially alleged the onset date of her disability as being June 22, 2009, (R. 411); she, subsequently, amended her onset date to July 21, 2010. (R. 47).

24-38, 117-187). Plaintiff, represented by counsel, testified at both hearings, different vocational experts testified at each hearing, and Plaintiff's mother, testified at the October 25, 2010 hearing. *Id.* On November 18, 2011, the ALJ, using the sequential evaluation process for disability,[3] issued an unfavorable decision. (R. 197-206). On February 21, 2012, the Appeals Council remanded the case for consideration of additional evidence Plaintiff had submitted. (R. 213-15).

Plaintiff represented by counsel, Plaintiff's mother, Latice Tyler, Dr. Jerry Cottone, a medical expert ("the ME"), and Terry Leslie, a vocational expert ("the VE"), testified at the third administrative hearing on May 22, 2012. (R. 39-116). On June 5, 2012, the ALJ, again using the sequential evaluation process for disability, issued an unfavorable decision. (R. 10-18). On October 21, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. (R. 1-3). This case was referred to the undersigned by the Honorable Timothy J. Savage, under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a report and recommendation.

---

[3]The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## II. FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on June 14, 1979, (R. 16), was thirty-two years old on the date of the last administrative hearing. She is five feet, seven inches tall and weighs 140 pounds. (R. 414). Plaintiff did not complete high school, (R. 419), and has past relevant work as a convenience store worker, fast food worker and short-order cook. (R. 106-09). She resides with her mother, brother and three nephews, ages five, seven and eight. (R. 62, 66, 69).

B.   Plaintiff's Testimony

At the May 22, 2012 administrative hearing, Plaintiff testified about her mental health condition and limitations. (R. 48-69). Daily, she experiences racing thoughts of suicide and homicide[4] and has panic attacks whenever she leaves her home unaccompanied[5] and encounters large groups of people.[6] (R. 51-53, 59). When Plaintiff has a panic attack, she retreats to an isolated place in order to calm down. (R. 59-60). She also has a sleep disorder. (R. 50).

In December 2011, Plaintiff, overwhelmed by racing thoughts of suicide, attempted suicide *via* an overdose.[7] (R. 48, 56). She was hospitalized for nine days to recover from that suicide attempt. (R. 48-49).

Plaintiff takes medication to treat her mental health and sleep disorder. (R. 49-50). Also, she sees a therapist every two weeks and a psychiatrist every four weeks to treat her mental health condition. (R. 51). Despite the medication, which causes drowsiness and stomach discomfort, Plaintiff only sleeps approximately three hours each night and does not sleep during

---

[4]According to her attorney, Plaintiff experiences passive auditory and visual hallucinations, but not command hallucinations. (R. 61).
[5]Plaintiff testified that she has a mentor and they go out to the mall or a park; she has never had a panic attack when going out with her mentor. (R. 54).
[6]Plaintiff testified that a crowd of 12 or more people would be enough to trigger a panic attack. (R. 59).
[7]Plaintiff had previously attempted suicide *via* overdose at age 15. (R. 66).

the day; further, her racing thoughts and panic attacks persist. (R. 50-51, 59-61).

Plaintiff has a stressful home life; there is a great deal of screaming and arguing there. (R. 62). Her brother struck her in the past and her nephews hit her on a daily basis. (R. 68).

C.  Testimony of Plaintiff's Mother, Latice Tyler

Latice Tyler, Plaintiff's mother, testified at the May 22, 2012 administrative hearing. (R. 69-85). She confirmed residing with Plaintiff and seeing her every day. (R. 69). Ms. Tyler opined that Plaintiff's condition had worsened since the last hearing, because her daughter constantly talks about suicidal thoughts. Just one week before the hearing, Plaintiff was hospitalized briefly, because of her suicidal thoughts. (R. 70, 72). Ms. Tyler says her daughter is depressed and spends approximately six hours a day alone in her bedroom. (R. 71-73). Ms. Tyler must remind Plaintiff to keep her doctor's appointments, to take her medication and to eat. (R. 73). She has observed Plaintiff during panic attacks, which are rare; the last one she witnessed took place a few months before the hearing. (R. 74-75). Furthermore, Plaintiff has a history of wandering around the neighborhood alone at 2:00 or 3:00 a.m. (R. 81).

Ms. Tyler has not observed any improvement in Plaintiff's condition, even with changes in medication. (R. 74). Plaintiff suffers bloating as a side effect of her medication. *Id.* Ms. Tyler testified that Plaintiff interacts well with her brother, but not with her nephews. (R. 79). Socially, Plaintiff visits her aunt, who lives nearby, approximately once or twice each month; the aunt picks Plaintiff up for their three or four hour visits.[8] (R. 79-80). Plaintiff does not visit anyone else and has no friends. (R. 80-81).

Plaintiff is willing to perform household chores, but Ms. Tyler does not allow her to do many, because, without assistance, Plaintiff will do them incorrectly. (R. 76-77). Ms. Tyler does permit her daughter to cut the grass, take out the trash and wash dishes. (R. 77). Finally,

---

[8] Plaintiff did not mention visiting her aunt. *See* (R. 48-69).

4

Plaintiff is able to attend to her personal grooming and hygiene. (R. 78).

D.     Medical Expert Testimony

The ME, a licensed psychologist, (R. 86), testified at the May 22, 2012 administrative hearing. (R. 85-105). He had neither examined nor treated Plaintiff. (R. 86). Based upon his review of the administrative record, Plaintiff's symptoms were inconsistent; he opined that she suffered from mood and anxiety disorders. (R. 88). The ME stated that the record did not support the diagnoses of schizoaffective disorder or bipolar disorder. (R. 96). However, he conceded that some symptoms of mood disorder were common to schizoaffective disorder and bipolar disorder. (R. 97).

The ME stated that Plaintiff had mild limitation in her activities of daily living, mild to moderate limitation in maintaining social functioning, moderate limitation in maintaining concentration, persistence or pace and no evidence of episodes of decompensation. (R. 91). Hence, he opined that she neither met nor equaled the requirements of Listed Impairments 12.04 or 12.06. (R. 89).

The ME assessed that Plaintiff should be limited in decision-making or exercising judgment at work. (R. 92). She could understand, remember and carry out simple instructions and complete simple, routine, repetitive tasks. (R. 92). The ME further opined that Plaintiff was capable of working in proximity to others and interacting appropriately with co-workers and supervisors. (R. 93). He explained that, although Plaintiff's home life was very stressful, the record revealed that, once removed from that stressful environment, such as when she visiting with her mentor or her aunt, she functioned better. (R. 94). The ME also opined that Plaintiff's mother prevented Plaintiff from performing more activities. (R. 104). Additionally, he stated that Plaintiff would require a low-stress work environment, hence, she should not perform work

5

that had production and pace requirements, and could not tolerate more than occasional work setting changes.  (R. 95).

E.    Vocational Testimony

The VE identified Plaintiff's past relevant work as:  (1) convenience store work, which was light[9] and unskilled;[10] (2) fast food worker, which was also light and unskilled; and (3) short-order cook, which was medium[11] and semi-skilled.[12]  (R. 106-09).  The ALJ asked the VE to consider the employability of a hypothetical person who was

> limited to understanding, remembering and carrying out simple instructions such as those involving a GED of 111 and . . . limited to jobs involving simple, routine, repetitive tasks with only occasional decision making and judgment, no production or pace work, occasional work setting changes, required only occasional interaction with supervisors and was able to also interact occasionally with coworkers and the public . . . .

(R. 113).  The VE responded that those limitations precluded all of Plaintiff's past work; *id.*, however, Plaintiff could perform several alternative jobs:  (1) table worker, which is sedentary[13] and unskilled (1,500 positions in the local economy, 1 million nationally); (2) bench assembler, which is sedentary and unskilled (2,000 positions in the local economy, 1.3 million nationally); and (3) hotel housekeeper, which is light, unskilled work (2,000 in the local economy, 1.7 million nationally).  (R. 114).

---

[9]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[10]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. §§ 404.1568(a), 416.968(a).

[11]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[12]"Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. §§ 404.1568(b), 416.968(b).  It is less complex than skilled work but more complex than unskilled work.  *Id.*  "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  *Id.*

[13]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties."  20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff's attorney, then, asked the VE to consider a hypothetical person

> of [Plaintiff's] age with an eleventh grade education who is not able to interact with the public in a work setting or with coworkers in the work setting or with supervisors in a work setting and is limited to unskilled, simple, repetitive, routine work, and the individual would not be expected to concentrate and focus in order to stay on task 80 percent of the workday due to side effects of medication, tiredness and racing thoughts, would that person be able to perform any of the jobs you identified?

(R. 115). The VE responded that such an individual could not perform any work. *Id.*

### III.  THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2014.

2. [Plaintiff] has not engaged in substantial gainful activity since July 21, 2010, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: generalized anxiety disorder, mood disorder with psychotic features, schizophrenia, bipolar disorder II and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to understanding remembering and carrying out simple instructions. She is also limited to simple, routine, repetitive tasks. [Plaintiff] is limited to occasional use of decision-making and judgment. She is further limited to occasional worksetting changes. [Plaintiff] is precluded from production or pace work. Moreover, she is limited to occasional interaction with supervisors, co-workers and the public.

6.  [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  [Plaintiff] was born on June 14, 1979 and was 31 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  [Plaintiff] has at limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969a)).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from July 21, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 12-14, 16-17).

## IV.  DISCUSSION

A.  <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  It is more than a mere scintilla of evidence but may be less than a

preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). On the other hand, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91.

B.      Burden of Proof in Disability Proceeding

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, work experience and residual functional

capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, she could perform other jobs that exist in the national economy and, therefore, denied her application for DIB and SSI benefits. (R. 10-18). Plaintiff asserts that the ALJ erred by: (1) improperly evaluating the opinions of Plaintiff's treating and examining sources; (2) failing to find that Plaintiff met the requirements of Listed Impairment 12.04; (3) improperly discrediting Plaintiff's and her mother's testimony concerning Plaintiff's limitations; and (4) disregarding the VE's testimony that Plaintiff could not work if her Global Assessment of Functioning score was 50. Pl. Br. at 7-15. In response, the Commissioner requests that the court affirm the ALJ's finding that Plaintiff is not disabled. Resp. at 1-16. This court will address Plaintiff's assertions of error in a different order.

1.     The ALJ Properly Determined That Plaintiff Does Not Meet Listed Impairment 12.04

Plaintiff asserts that the ALJ erred by failing to find that she meets the requirements of Listed Impairment ("LI") 12.04. Pl. Br. at 11-13. The Commissioner responds that Plaintiff has failed to satisfy her burden to prove that she meets the listing and the ALJ relied upon substantial evidence, the opinion of the ME, to find Plaintiff did not meet the listing. Resp. at 12-13. This court agrees that the ALJ properly determined that Plaintiff did not meet LI 12.04.

LI 12.04 applies to Affective Disorders. In order to satisfy this listing, a claimant must satisfy two separate sets of requirements, called the "A" and "B" requirements. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 ("§ 12.04"). Plaintiff claims that she meets the "A" requirements for a depressive syndrome.[14] *See* Pl. Br. at 11 (citing § 12.04(A)(1)). Furthermore,

---

[14]LI 12.04 also has A requirements for a manic syndrome or a bipolar syndrome. *See* § 12.04(A)(2)-(3). Plaintiff does not assert that she can satisfy those requirements.

she asserts that she has marked limitation in social functioning and in maintaining concentration, persistence or pace. *See id.* at 12-13. If she were correct, she would meet LI 12.04. *See* § 12.04(B). However, there are deficiencies in Plaintiff's assertions.

First, although Plaintiff cites § 12.04(A)(1), she fails to acknowledge that she must provide proof of four out of nine depressive symptoms. She has failed to identify which of the four she believes she can satisfy. *See* Pl. Br. at 11-12. Second, although she asserts that she has marked limitation in social functioning and in maintaining concentration, persistence or pace, she has not identified any record evidence that contains these specific findings. *See id.* at 12-13. Furthermore, direct evidence in the record, *i.e.,* the ME's testimony, specifically states that Plaintiff neither has marked limitation in these two areas of functioning, (R. 91), nor satisfies the requirements of LI 12.04. (R. 89). That testimony provides substantial evidence to support the ALJ's conclusion that Plaintiff does not meet LI 12.04. Hence, this court should not disturb the ALJ's listing conclusion.

  2. <u>The ALJ Properly Rejected The VE's Response To Plaintiff's Counsel's Hypothetical Question</u>

Plaintiff asserts that the VE testified at May 22, 2012 administrative hearing that a person with a Global Assessment of Functioning ("GAF")[15] score of 50[16] could not work. Pl. Br. at 15 (citing R. 115). The Commissioner correctly notes that the VE was not asked this question at the May 22, 2012 hearing. *See* Resp. at 15 n.2 (citing R. 115). Because this question was not posed to the VE at that hearing, *see* (R. 115), Plaintiff's initial assertion of error lacks merit.

In her Reply, Plaintiff abandons reliance upon GAF scores and shifts focus to the actual

---

[15]GAF refers to Global Assessment of Functioning, which is "the clinician's judgment of the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* at 32 (2000) ("*DSM-IV-TR*").

[16]A GAF score in the range of 41-50 corresponds to "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational or school functioning** (e.g., no friends, unable to keep a job)." *DSM-IV-TR* at 34.

11

hypothetical question counsel posed to the VE at the May 22, 2012 hearing. *See* Reply at 9-10. Plaintiff asserts that the question was based upon limitations found by Victor Santiago, M.D. and John Tardibuono, D.Ed. *Id.* at 10. However, as explained *infra* Section IV(C)(4), the ALJ properly rejected those limitations. Hence, the ALJ was not required to include them in any hypothetical question she would rely upon. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

      3.  <u>The ALJ Improperly Evaluated Plaintiff's and her Mother's Credibility</u>

Plaintiff asserts that the ALJ provided an inadequate explanation for why she did not fully credit the testimony of Plaintiff and her mother, Ms. Tyler. Pl. Br. at 13-15. The Commissioner responds that the ALJ reasonably evaluated the credibility of Plaintiff and her mother. Resp. at 13-15. This court finds that the ALJ committed reversible error when evaluating the credibility of Plaintiff and her mother.

The ALJ concluded that Plaintiff's pre-hearing written statements concerning her limitations were only credible to the extent that her statements were consistent with the ALJ's assessment of her residual functional capacity ("RFC"). (R. 15). Additionally, the ALJ found that Plaintiff's mother's pre-hearing written statements about Plaintiff's condition were consistent with Plaintiff's written statements and both statements were found not fully credible. (R. 15). However, the ALJ did not explain why she devalued Plaintiff's testimony and she never expressly evaluated the credibility of Ms. Tyler's testimony.

The ALJ was required to set forth the reasons she did not fully credit Plaintiff's written statements, and, hence, reduced the credibility of Plaintiff's written statements concerning her impairments. *See* Social Security Ruling ("SSR") 06-7p, 1996 WL 374186, *1. It was insufficient for the ALJ to simply state that she did not credit Plaintiff fully. *See id.* at *4.

Specific reasons, supported by evidence in the record, were required to substantiate the ALJ's evaluation of Plaintiff's credibility concerning her limitations. *Id.* The ALJ's failure to provide explicit reasons for discrediting Plaintiff constituted reversible error. *See id.*

The ALJ also failed to explicitly evaluate the credibility of Plaintiff's mother's testimony. When a lay witness provides testimony that supports the claimant's credibility, as Plaintiff's mother did, the ALJ has the duty to specifically evaluate the credibility of that witness. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Herein, the ALJ expressly evaluated Ms. Tyler's pre-hearing statement, but ignored the extensive testimony Ms. Tyler provided at the hearing. *See* (R. 15). That omission constitutes reversible error. *See Burnett*, 220 F.3d at 122.

### 4. The ALJ Properly Evaluated The Opinions Of Drs. Santiago, Tardibuono And The ME

Plaintiff claims that the ALJ improperly evaluated the opinions of her treating physician, Dr. Santiago, the consulting examiner, Dr.Tardibuono, and the ME. *See* Pl. Br. at 8-11. The Commissioner responds that the ALJ properly weighed the opinions of these medical sources. *See* Resp. at 6-12. This court finds that the ALJ properly weighed the conflicting medical evidence in the record.

The ALJ's evaluation of the medical opinions cited by Plaintiff follows:

> the undersigned assigns limited weight to the marked restrictions in the Medical Source Statement (Mental) of Victor Santiago, M.D., a treating psychiatrist. Said restrictions are not supported by the record as a whole and are not consistent with [Letitia Covaci, M.D., a treating psychiatrist]'s observations that [Plaintiff] has an appropriate affect with no psychotic symptoms. . . . However, the undersigned assigns great weight to the opinion of Jerry Cottone, Ph.D., a non-examining medical expert and psychologist, that [Plaintiff's] impairments do not meet or equal listings 12.04 or 12.06. Said opinion is supported by the record as a whole and is consistent with Dr. Covaci's observations that [Plaintiff] has an

>appropriate affect with no psychotic symptoms. Moreover, the undersigned assigns limited weight to Dr. Tardibuono's opinion that [Plaintiff] had a GAF score of 46 on September 11, 2009. Said opinion is not supported by the record as a whole and is not consistent with [Binh Dinh, M.D., a treating psychiatrist]'s opinions that [Plaintiff] had GAF scores in the 50's in 2009. The undersigned assigns great weight to said opinions of Dr. Dinh as they are supported by the record as a whole and are consistent with the opinions of [Plaintiff's] treating providers at T.W. Podessa & Associates and Lancaster General Hospital that [Plaintiff] had GAF scores in the 50's and 60's in 2011 and 2012. Said opinions of [Plaintiff's] treating providers at T.W. Podessa & Associates and Lancaster General Hospital are supported by the record as a whole and are consistent with Dr. Covaci's observations that [Plaintiff] has an appropriate affect with no psychotic symptoms. (See Exhibits 2F, 3F, 4F, 7F, 8F, 11F, 12F, 13F, 14F and 15F).

(R. 15-16).

The ALJ appropriately discharged her duty to evaluate the conflicting medical evidence in the record. *See Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011). So long as the ALJ provided a clear and accurate explanation, with appropriate citation to the record, her determination would be supported by the requisite substantial evidence. *Id.* She was clearly empowered to prefer the opinions of the ME to those of Plaintiff's treating physician. *Id.*

Herein, the ALJ explained that she afforded more weight to the ME's opinions over those of Dr. Santiago, because the ME's opinions were consistent with the record as a whole and the findings of Dr. Covaci, a treating physician. (R. 15). Further, the ALJ rejected Dr. Tardibuono's low GAF score of 46, because it was inconsistent with higher GAF scores found by several of Plaintiff's treating physicians. These conclusions, well within the ALJ's purview, accurately cited to the record, and are, therefore, supported by substantial evidence. *See Brown*, 649 F.3d at 196.

## V.   CONCLUSION

A thorough review of the record indicates that the Commissioner's final decision was legally flawed and, hence, is unsupported by substantial evidence. Accordingly, I make the following:

### RECOMMENDATION

**AND NOW**, this 29th day of September, 2014, I respectfully recommend that:

1. The Report and Recommendation be **APPROVED** and **ADOPTED**.

2. The Plaintiff's Request for Review be **GRANTED**.

3. The case be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), so that the ALJ can expressly reconsider Plaintiff's credibility and that of her mother.

4. Judgment be **ENTERED** in favor of Plaintiff and against Defendant Commissioner of the Social Security Administration.

It be so **ORDERED**.

                                              */s/ Carol Sandra Moore Wells*
                                              CAROL SANDRA MOORE WELLS
                                              Chief United States Magistrate Judge